**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PopSockets LLC, | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | Case No. 22-CV-00870 |
| v. | **)** | |
| | **)** | Judge Sara L. Ellis |
| The Partnerships and Unincorporated | **)** | |
| Associations Identified on Schedule "A", | **)** | Magistrate Judge Maria Valdez |
| | **)** | |
| Defendants. | **)** | |
| | **)** | |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Now comes Defendants SHIEID US and BAILI-US (Collectively "***SHIEID***") and for their

Answer, Affirmative Defenses and Counterclaims, state as follows:

**I. JURISDICTION AND VENUE**

1.    This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and

28 U.S.C. § 1331.

**ANSWER: Admitted.**

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may

properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets

business activities toward consumers in the United States, including Illinois, through at least the fully

interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached

hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting

up and operating e-commerce stores that target United States consumers using one or more Seller

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

1

Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of PopSockets' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused PopSockets substantial injury in the State of Illinois.

**ANSWER: With respect to themselves, Defendants admit that venue is proper and they have sold products in the United States and Illinois but deny the remaining allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph**

## II. INTRODUCTION

3.     This action has been filed by PopSockets to combat e-commerce store operators who trade upon PopSockets' reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products, including grips, stands and mounts for electronic mobile devices, using infringing and counterfeit versions of PopSockets' federally registered trademarks (the "Counterfeit PopSockets Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit PopSockets Products to unknowing consumers. E commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. PopSockets is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit PopSockets Products over the Internet. PopSockets has been

and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

### III. THE PARTIES

4.      Plaintiff PopSockets LLC is a limited liability company organized and existing under the laws of the State of Colorado, having its principal place of business at 5757 Central Avenue, Boulder, CO 80301.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

5.      PopSockets designs, manufactures and sells innovative lifestyle products. PopSockets' flagship product, the PopSockets grip-stand, was invented by philosophy professor David Barnett in 2012, with the first PopSockets grip-stand sold on PopSockets.com in 2014. Since then, PopSockets' sales have been growing exponentially: as of October 2020, PopSockets has sold more than 200 million PopSockets grip-stands.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

6.      The PopSockets POPGRIP grip-stand is a collapsible grip and stand that provides secure one-hand holding for any mobile device. Its companion product, the POPMOUNT phone mount, enables PopSockets users to place their mobile phones on their dashboards, bathroom mirrors, lockers and other surfaces for hands-free viewing. Customizable, re-positionable, and fun to pop, PopSockets grip-stands embody the company's mission to merge function with self-expression.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

7.      PopSockets won the WIRED "Fueling Innovation" contest sponsored by Mercedes-Benz in 2013. USA Today named PopSockets among "the coolest tech you have to see" at the Consumer Electronics Show (CES) in Las Vegas in 2015. The Wall Street Journal said that PopSockets products are the best compact smartphone support they have seen. In February 2016, PopSockets was the first recipient of the Fit For Real Life Seal Of Approval as an ergonomically beneficial tool for mobile devices. In 2018, PopSockets LLC was listed as #2 on the Inc 5000 list of the fastest-growing companies in America and PopSockets Founder and CEO David Barnett was named the EY National Entrepreneur of The Year® 2018 Award in the Consumer Products and Retail category. PopSockets' products have been Featured on Buzzfeed, Vogue, Oprah, People, Bazaar, The Wallstreet Journal, Forbes, USAToday, NY Magazine and more, with more than 15 billion unique impressions in the U.S. in 2020.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

8.      PopSockets products are distributed and sold to consumers throughout the United States, including in Illinois, through retailers such as Best Buy, Target, T-Mobile, Verizon, and other fine independent retail shops, and via the PopSockets.com website.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

9.      PopSockets incorporates a variety of distinctive marks in the design of its various PopSockets products. As a result of its long-standing use, PopSockets owns common law trademark rights in its trademarks. PopSockets has also registered its trademarks with the United States Patent and Trademark Office. PopSockets products typically include at least one of PopSockets' registered

4

trademarks. Often several PopSockets marks are displayed on a single PopSockets product. PopSockets uses its trademarks in connection with the marketing of its PopSockets products, including the following marks which are collectively referred to as the "POPSOCKETS Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 4,572,125 | POPSOCKETS | July 22, 2014 | For: Carrying cases, holders, and protective cases specially adapted for use with handheld digital electronic devices, namely, phones, sound players, video players in class 009. |
| 5,486,563 | POPSOCKETS | June 5, 2018 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players in class 009. |
| 4,942,725 | POPCLIP | April 19, 2016 | For: Stands for handheld digital electronic devices, namely, cell phones equipped with extending attachments in class 009. |
| 5,662,835 | POP | January 22, 2019 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | cameras, and portable sound and video players in class 009. |
| 5,204,637 | P❍PS❍CKETS | May 16, 2017 | For: Grips, stands, and mounts for handheld electronic devices, namely, smartphones, tablets, cameras, sound players, and video players in class 009. |
| 5,394,408 |  | February 6, 2018 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players in class 009. |
| 5,783,395 | POPTIVISM | June 18, 2019 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players in class 009.<br><br>For: Charitable fundraising by means of manufacturing and selling custom hand grips, stands, and |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players and directing a portion of customer payments to a charity of the customer's choice in class 036.<br><br>For: Custom manufacture of hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players for others for purposes of charitable fundraising in class 040. |
| 5,757,738 | POPMINIS | May 21, 2019 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players in Class 009. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 5,757,735 | POPGRIP | May 21, 2019 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players; Structural components for hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players, namely, adhesive bases and detachable expandable grips in class 009. |
| 5,651,330 | TWIST | January 8, 2019 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players in class 009. |
| 6,556,908 | AIRBAG | November 9, 2021 | For: Hand grips, stands, mounts, and cases adapted for handheld electronic devices, namely, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | smartphones, tablet computers, cameras, and portable sound and video players in class 009. |
| 6,005,169 |  | March 10, 2020 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players in class 009. |
| 6,005,170 |  | March 10, 2020 | For: Hand grips, stands, and mounts adapted for handheld electronic devices, namely, smartphones, tablet computers, cameras, and portable sound and video players in class 009. |

**ANSWER: Defendants deny that registration number 6,556,908 for AIRBAG is a valid trademark registration. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

10.     The above U.S. registrations for the POPSOCKETS Trademarks are valid, subsisting, and in full force and effect. The POPSOCKETS Trademarks have been used exclusively and continuously by PopSockets and have never been abandoned. The registrations for the POPSOCKETS Trademarks constitute prima facie evidence of their validity and of PopSockets' exclusive right to use the POPSOCKETS Trademarks pursuant to 15 U.S.C. §1057(b). Attached

hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the POPSOCKETS Trademarks included in the above table.

**ANSWER: Defendants deny the allegations in this paragraph with respect to registration number 6,556,908 for AIRBAG. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

11.     The POPSOCKETS Trademarks are exclusive to PopSockets, and are displayed extensively on PopSockets products and in PopSockets' marketing and promotional materials. The PopSockets brand has seen exponential growth in the last few years and has been extensively promoted and advertised at great expense. In fact, PopSockets has expended millions of dollars annually in advertising, promoting and marketing featuring the POPSOCKETS Trademarks. PopSockets products have also been the subject of extensive unsolicited publicity resulting from their high quality and innovative design. Because of these and other factors, the PopSockets name and the POPSOCKETS Trademarks have become well-known throughout the United States.

**ANSWER: Defendants deny the allegations in this paragraph with respect to registration number 6,556,908 for AIRBAG. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

12.     The POPSOCKETS Trademarks are distinctive when applied to the PopSockets products, signifying to the purchaser that the products come from PopSockets and are manufactured to PopSockets' quality standards. The innovative and often unconventional marketing and product design of the PopSockets products have enabled the PopSockets brand to achieve widespread recognition and fame and have made the POPSOCKETS Trademarks well-known. As such, the goodwill associated with the POPSOCKETS Trademarks is of incalculable and inestimable value to PopSockets.

**ANSWER: Defendants deny the allegations in this paragraph with respect to registration number 6,556,908 for AIRBAG. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

13.     PopSockets has operated an e-commerce website since 2014 where it promotes and sells genuine PopSockets products at PopSockets.com. Sales of PopSockets products via the PopSockets.com website represent a significant portion of PopSockets' business. The PopSockets.com website features proprietary content, images and designs exclusive to PopSockets.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

14.     PopSockets has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the POPSOCKETS Trademarks. As a result, products bearing the POPSOCKETS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from PopSockets. PopSockets is a multi-million-dollar operation, and PopSockets products have become among the most popular of their kind in the world.

**ANSWER: Defendants deny the allegations in this paragraph with respect to registration number 6,556,908 for AIRBAG. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

15.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to PopSockets. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph as they pertain to the other defendants. With respect to themselves, defendants deny the allegations in the first sentence, admit they are located in China, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

16.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for PopSockets to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, PopSockets will take appropriate steps to amend the Complaint.

**ANSWER: With respect to themselves, Defendants admit they operate ecommerce stores under the names SHIEID US and BAILI-US and deny the allegations in the second sentence and lack knowledge or information sufficient to form a belief about the truth of third sentence. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The success of the PopSockets brand has resulted in significant counterfeiting of the POPSOCKETS Trademarks. Consequently, PopSockets has a worldwide anticounterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, PopSockets has identified numerous fully interactive e-commerce stores offering Counterfeit PopSockets Products on online marketplace platforms such as Amazon, eBay, AliExpress, Wish.com, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the

United States. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 2**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

18.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity,

counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

19.     Defendants have targeted sales to Illinois residents by setting up and operating ecommerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit PopSockets Products to residents of Illinois.

**ANSWER: With respect to themselves, Defendants deny they sold or offered to sell Counterfeit PopSockets Products, but otherwise admit the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

20.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing ecommerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. PopSockets has not licensed or authorized Defendants to use any of the POPSOCKETS Trademarks, and none of the Defendants are authorized retailers of genuine PopSockets products.

14

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph, except that they admit to accepting payment in US Dollars in various ways and they admit the last sentence. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

21. Many Defendants also deceive unknowing consumers by using the POPSOCKETS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PopSockets Products. Other e-commerce stores operating under the Seller Aliases omit using POPSOCKETS Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for PopSockets Products.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

22. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

23. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit PopSockets Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like

15

Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit PopSockets Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit PopSockets Products were manufactured by and come from a common source and that Defendants are interrelated.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

25. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

26.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of PopSockets' enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to PopSockets. Indeed, analysis of financial account transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based financial accounts to offshore accounts

outside the jurisdiction of this Court.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

27.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit PopSockets Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from PopSockets, have jointly and severally, knowingly and willfully used and continue to use the POPSOCKETS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit PopSockets Products into the United States and Illinois over the Internet.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

28.     Defendants' unauthorized use of the POPSOCKETS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit PopSockets Products, including the sale of Counterfeit PopSockets Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming PopSockets.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

COUNT I

TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29.     PopSockets hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: Defendants adopt and reallege their answers set forth in the preceding paragraphs.**

30.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered POPSOCKETS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The POPSOCKETS Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from PopSockets products offered, sold or marketed under the POPSOCKETS Trademarks.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

18

31.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the POPSOCKETS Trademarks without PopSockets' permission.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

32.     PopSockets is the exclusive owner of the POPSOCKETS Trademarks. PopSockets' United States Registrations for the POPSOCKETS Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of PopSockets' rights in the POPSOCKETS Trademarks, and are willfully infringing and intentionally using counterfeits of the POPSOCKETS Trademarks. Defendants' willful, intentional and unauthorized use of the POPSOCKETS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit PopSockets Products among the general public.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph as the related to registration number 6,556,908 for AIRBAG. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph as related to the other claimed trademarks. Defendants deny all other allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

33.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

34.     PopSockets has no adequate remedy at law, and if Defendants' actions are not enjoined, PopSockets will continue to suffer irreparable harm to its reputation and the goodwill of its well-known POPSOCKETS Trademarks.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

35.     The injuries and damages sustained by PopSockets have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit PopSockets Products.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36.     PopSockets hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: Defendants adopt and reallege their answers set forth in the preceding paragraphs.**

37.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit PopSockets Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with PopSockets or the origin, sponsorship, or approval of Defendants' Counterfeit PopSockets Products by PopSockets. By using the POPSOCKETS Trademarks on the Counterfeit PopSockets Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit PopSockets Products.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

38. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit PopSockets Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C.§1125.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

39. PopSockets has no adequate remedy at law and, if Defendants' actions are not enjoined, PopSockets will continue to suffer irreparable harm to its reputation and the goodwill of its PopSockets brand.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

## FACTS IN COMMON TO AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

1.     Defendant SHIEID sells phone cases on Amazon through two online stores SHIEID US and BAILI-US (collectively "**SHIEID**") including a thermoplastic polyurethane phone case for a Samsung Z Flip 3 5G flip phone sold by both online stores.

2.     SHIEID has no connection to the other named defendants in this case.

3.     As part of its motion for a TRO, Plaintiff has submitted screenshots of the phone case sold by both stores: SHIEID US's screenshots, found in DKT# 17-2, pp. 136-140, attached as **EXHIBIT A,** and BAILI-US's screenshots, found in DKT# 17-1, pp. 27-31, attached as **EXHIBIT B.**

4.     Aside from Exhibits A and B, Plaintiff has not submitted any other evidence related to SHIEID to this Court.

5.     The description SHIEID US' phone case on its Amazon store reads: "SHIEID Samsung Z Flip 3 5G Case, Galaxy Z Flip 3 Case with Ring, Built-in Airbag Protective Cover for Samsung Galaxy Z Flip 3 5G, Lavender". Exhibit A, p. 137.

6.     The Description on BAILI-US' phone case on its Amazon store reads: "BAILI Samsung Flip 3 Case, Galaxy Flip 3 Case with Ring, Built-in Airbag Protective Case for Samsung Galaxy Z Flip 3 5G 2021, Black". Exhibit B, p. 28.

7.     SHIEID has not used any of the following terms listed as registered trademarks in the Complaint (Dkt# 1, ¶ 9) in connection with either phone case: PopSockets, PopClip, Pop, Poptivism, Popminis, Popgrip, Twist.

8.     SHIEID did not use any of the drawings Plaintiff claims as registered trademarks in ¶9 of the Complaint in connection with either phone case.

9. Since at least as early as March 2017, the terms "Airbag" has been in continuous use by phone case manufacturers and sellers to describe a feature of phone cases: an air-pocket, cushion, or bumper on the four corners of the phone case.

10. **Exhibit C** is a diagram of the design specifications from the manufacturer for the phone cases sold by SHIEID, illustrating the "Airbag" feature.

11. SHIEID did not use "Airbag" as a trademark on either online store but strictly as a description of the airbag corner feature of the phone cases.

12. Plaintiff's registered trademark for AIRBAG, Reg. No. 6,556,908 was initially filed on an Intent Use basis pursuant to Section 1(b) (15 U.S.C. §1051 (b)) on November 24, 2020. Plaintiff subsequently filed a statement of use on September 10, 2021, claiming a first use in commerce of September 10, 2021. The registration was issued on November 9, 2021.

13. The goods and In its application and subsequent statement of use, Plaintiff did not claim that AIRBAG had acquired secondary meaning.

14. Phone cases have been sold in the United States with the description "Airbag" describing the corner bumper feature since prior to the date of Plaintiff's intent to use application was filed on November 24, 2020.

15. In addition to the airbag corner bumpers, the terms "airbag" has been used to describe several types of cases or features of cases for sale in the United States prior to November 24, 2020.

16. The Plaintiff, PopSockets LLC has been in the business of manufacturing, distributing and selling cases for handheld electronic devices including phone cases and phone case related products since at least as early as November of 2013.

17. At the time of filing the ITU application on November 24, 2020, a search on Google.com or on Amazon's website or any number of other e-commerce platforms or search

engines would have readily yielded numerous examples of the term "airbag" used in connection with cases for handheld electronics available for purchase in the United States, including the airbag corner feature.

18.    This is an exceptional case that merits an award of costs and attorney fees to Counter-Plaintiff pursuant to 15 U.S.C. § 1117(a).

19.    Since Defendants have been accused by Plaintiff of trafficking in counterfeit goods, a felony under 18 USC § 2320, Defendants wish to clear their name and to preclude PopSockets from filing future lawsuits accusing them or others of counterfeiting or infringement for the use of "airbag" as a description of the airbag corner bumper.

20.    Therefore, although the counterclaims somewhat mirror the counts in the complaint, Plaintiff should not have unilateral control over whether this Court reaches the merits of the case.

21.    Pursuant to FRCP 57, a speedy hearing is requested.

22.    For each of the following counts of these affirmative defenses and counterclaims, all preceding numbered paragraphs are realleged as part of the count.

## AFFIRMATIVE DEFENSES

### Affirmative Defense I – Descriptive Fair Use under 15 U.S.C. § 1115(b)(4)

23.    SHIEID US and BAILI-US' use of "airbag" is fair and in good faith, only used to describe the airbag corner feature, and not used as a mark.

24.    Therefore, SHIEID US and BAILI-US' use of "airbag" is fair use under 15 U.S.C. § 1115(b)(4) and the complaint should be dismissed with respect to SHIEID US and BAILI-US.

### Affirmative Defense II – Invalidity of Mark

25.    The AIRBAG mark, Registration No., Reg. No. 6,556,908 is invalid, as it is either generic or merely descriptive of a common and well-known features and types of phone cases.

26.     PopSocket's Intent to Use application was not filed in good faith. When the application was filed PopSockets had actual or constructive knowledge that "airbag" was commonly used in the handheld electronic device case industry to describe types of cases or features of cases, including the "Airbag" corner type case sold by Counter-Plaintiffs. PopSockets likewise had actual or constructive knowledge that "airbag" was commonly used to describe types of such cases or features of such cases for sale to the public in the United States including the "Airbag" corner type case sold by Counter-Plaintiffs.

27.     Therefore, the complaint should be dismissed with respect to SHIEID.

## COUNTERCLAIMS

For their Counterclaims against Counter-Defendant PopSockets, LLC, Counter-Plaintiffs SHIEID US and BAILI-US state as follows:

### Jurisdiction and Venue

28. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338, and 28 U.S.C. § 1331.

29. This Court has personal jurisdiction over the Counter Defendant, in that Counter Defendant has filed the instant lawsuit, conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit, of which Counter Plaintiff stands accused, were undertaken in Illinois and within this Judicial District.

30. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Counter Defendant filed the instant lawsuit.

**Counter Claim Count I**

**Declaratory Judgment of non-infringement Pursuant to 28 USC § 2201**

31. SHIEID's use of the term "airbag" on its Amazon page does not infringe any registered or common law trademark owned by Counter-Defendant PopSockets LLC.

WHEREFORE, Counter-Plaintiffs SHIEID US and BAILI-US respectfully requests that this Court enter an order in its favor and against Counter-Defendant PopSockets, LLC that:

A. Declares that SHIEID US and BAILI-US's description of its phone cases using the term "airbag" is descriptive and does not infringe any registered or common law trademark held by Counter-Defendant PopSockets LLC under 15 USC §1114 and

B. Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

**Counter Claim Count II**

**Declaratory Judgment of non-counterfeiting Pursuant to 28 USC § 2201**

32. SHIEID's use of the term "airbag" on its Amazon page does not constitute counterfeiting of any registered or common law trademark owned by Counter-Defendant PopSockets LLC.

WHEREFORE, Counter-Plaintiffs  SHIEID US and BAILI-US respectfully requests that this Court enter an order in its favor and against Counter-Defendant PopSockets, LLC that:

A. Declares that SHIEID US and BAILI-US's description of its phone cases using the term "airbag" does not constitute counterfeiting under 15 USC §1114 and 15 USC § 1127, and

B. Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

**Counter Claim Count III**

**Declaratory Judgment that Defendants' use of "Airbag" does not constitute False Designation of Origin Pursuant to 28 USC § 2201**

33. SHIEID's use of the term "airbag" on its Amazon page does not constitute False Designation of Origin within the meaning of 15 U.S.C. § 1125(a).

26

WHEREFORE, Counter-Plaintiffs SHIEID US and BAILI-US respectfully requests that this Court enter an order in its favor and against Counter-Defendant PopSockets, LLC that:

A.  Declares that SHIEID US and BAILI-US's description of its phone cases using the term "airbag" does not constitute false designation of origin under 15 USC §1125, and

B.  Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

## Counter Claim Count IV

## Cancellation of Trademark Registration Pursuant to 15 USC § 1119

34. Counter Defendant's AIRBAG mark, Registration No., Reg. No. 6,556,908, should be cancelled for one or more of the following alternative reasons.

a.  "Airbag" is generic when used in connection with cases for handheld electronic devices;

b.  "Airbag" is descriptive when used in connection with cases for handheld electronic devices.

WHEREFORE, Counter-Plaintiffs SHIEID US and BAILI-US respectfully requests that this Court enter an order in its favor and against Counter-Defendant PopSockets, LLC that:

A.  Cancels Counter Defendant's AIRBAG mark, Registration No., Reg. No. 6,556,908, and

B.  Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

Dated: May 31, 2022

SHIEID US and BAILI-US


By:/s/ Wesley Johnson
One of their attorneys

Wesley Johnson
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Suite 1500
Chicago, IL 60602
(312) 752-4828

Fax: (312) 264-2535
wjohnson@goodtov.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, certifies that on May 31, 2022, I served a copy of the attached **Answer, Affirmative Defenses and Counter Claims**, on all parties who have appeared via ECF.

By:/s/ Wesley Johnson